FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 10 2026

TAMMY H. DOWNS, CLERK
By: DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF ARKANSAS; ARKANSAS HIGHER EDUCATION COORDINATING BOARD; ARKANSAS DIVISION OF HIGHER EDUCATION; KEN WARDEN, in his official capacity as Commissioner of the Arkansas Division of Higher Education, JACOB OLIVA, in his official capacity as Secretary of the Arkansas Department of Education.

Defendants.

Civil No. 4:26-cv-928-DPM

**COMPLAINT**

This case assigned to District Judge Marshall
and to Magistrate Judge Harris

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## INTRODUCTION

1. Federal law prohibits illegal aliens from being eligible to receive postsecondary education benefits based on residence within a state if such benefits are denied to U.S. citizens residing in other states. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet Arkansas has ignored this Congressional prohibition for years.

2. In 2019, Arkansas passed Act 844, authorizing all Arkansas state-supported institutions of higher education to provide in-state tuition to eligible illegal aliens. *See* ARK. CODE ANN. § 6-60-215 ("Section 215"). Implementing regulations provide that schools "wishing to provide in-state tuition to nontraditional documented immigrants" need only adopt such a policy in accordance with Section 215 and submit the policy to the Arkansas Division of Higher Education. *See* ARK. CODE R. § 369-102.

3. Section 215 and its implementing regulations constitute blatant unequal treatment favoring illegal aliens over U.S. citizens. Worse, such preferential treatment is squarely prohibited and preempted by federal law mandating that "an alien who is not lawfully present in the United States *shall not* be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). Arkansas's obscure characterization of illegal aliens taking advantage of Section 215 as having a "nontraditional" immigration status does nothing to change this clear demand. Accordingly, under the Supremacy Clause of our Nation's Constitution, Section 215's extension of eligibility for postsecondary education benefits to illegal aliens is unconstitutional and must yield to federal law.

4. Courts have long recognized 8 U.S.C. § 1623's express preemptive effect. *See, e.g., Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (holding that Section 1623 "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible"); *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a), "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *8 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .").

5. Numerous courts have struck down similar in-state tuition laws as unconstitutional based on Section 1623's preemptive effect. *See, e.g., United States v. Kansas*, No. 5:26-CV-04066,

2026 WL 2654069, at *6 (D. Kan. Sept. 9, 2026) (finding Kansas in-state tuition statute "preempted because it confers a postsecondary education benefit on an unlawfully present alien based on a state-defined residency conclusion without making that same benefit generally available to United States citizens and nationals regardless of their residence"); *United States v. Illinois*, No. 25-CV-1691, 2026 WL 2137256, at *8–11 (S.D. Ill. July 24, 2026) (finding Illinois in-state tuition statutes as applied to illegal aliens expressly preempted by Section 1623(a)); *United States v. Nebraska*, --- F.Supp.3d ---, No. 8:26-CV-172, 2026 WL 1584862 *27 (D. Neb. June 3, 2026) (holding Nebraska laws were preempted by Section 1623(a) because "they allow aliens unlawfully present in the United States to qualify as 'residents' of Nebraska for the purpose of post-secondary education benefits but deny such benefits to United States citizens of other states'"); *United States v. Oklahoma*, No. 6:25-CV-00265, ECF No. 23 at 1 (E.D. Okla. Aug. 29, 2025) (Order and Final Consent Judgment) (holding that challenged Oklahoma in-state tuition laws "as applied to aliens who are not lawfully present in the United States, violates the Supremacy Clause and are unconstitutional and invalid"); *United States v. Texas*, No. 7:25-CV-00055, 2025 WL 1583869, at *1 (N.D. Tex. June 4, 2025) (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because the challenged provisions violated the Supremacy Clause); *see also United States v. Kentucky Council on Postsecondary Educ.*, No. 3:25-CV-00028, 2026 WL 880597 (E.D. Ky. Mar. 31, 2026) (holding Kentucky regulation violated 8 U.S.C. § 1621(d) because it was a regulation, not an enacted State law as required by Section 1621(d)). This Court should do the same.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

7. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because: (1) all Defendants reside in this judicial district, and (2) a substantial portion of the events giving rise to this Complaint arose from events occurring within this judicial district.

8. The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2; 28 U.S.C. §§ 1651, 2201, and 2202; and the Court's inherent equitable powers.

**PARTIES**

9. Plaintiff, the United States of America, regulates immigration under its inherent, constitutional, and statutory authorities. Plaintiff enforces federal immigration laws through its Executive agencies, including the Department of Justice, Department of Homeland Security ("DHS"), and DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

10. Defendant State of Arkansas is a state of the United States.

11. Defendant Arkansas Higher Education Coordinating Board (the "Higher Education Board") is the chief policy-making body overseeing all publicly supported higher education in the State, including the programs at issue in this lawsuit. *See* ARK. CODE ANN. § 6-61-202. The Higher Education Board's powers and duties include promulgating and adopting "uniform definitions and forms in such matters as financial reporting, academic statistics, and resident status of students for use in making financial recommendations and standard enrollment datato be followed by the institutions of higher education" in the State. . *Id.* § 6-61-202(a)(4).

12. Defendant Arkansas Division of Higher Education ("ADHE") implements the Higher Education Board's policies, including the programs at issue in this lawsuit. *See* ARK. CODE ANN. § 25-7-101. The ADHE consists of the Higher Education Board and any other divisions that may be created by law and placed under the ADHE. *See id.*

13. Defendant Ken Warden is the Commissioner of ADHE. He is the "executive head" of ADHE and each division of ADHE is under his direction, control, and supervision. *See id.* He is sued in his official capacity.

14. Defendant Jacob Oliva is the Secretary of the Arkansas Department of Education. ("ADE"). *See* Arkansas Dep't of Educ., Secretary's Biography, https://ade.arkansas.gov/Biography (last visited Sept. 9, 2026). By statute, the ADHE Commissioner reports to the Secretary of the ADE. *See* ARK. CODE ANN. § 25-7-101(b)(3).

**FEDERAL LAW**

15. The Constitution empowers Congress to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

16. The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, which necessarily includes his duty to take care over immigration matters.

17. The United States has inherent, well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from its inherent obligations as a sovereign, the Constitution, and numerous acts of Congress. *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare . . . ."); *Ping v. United States*, 130 U.S. 581, 603–04 (1889) ("Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens it would be to that extent subject to the control of another power."); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation. When Congress

prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.").

18. Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (explaining that matters of immigration concern "policy questions entrusted exclusively to the political branches of our Government," leaving "no judicial authority" for courts "to substitute [their] political judgment for that of the Congress").

19. In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). Those Acts sought to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. *See id.*; *see also* 8 U.S.C. § 1601(1) ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

20. Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." 8 U.S.C. § 1601(2)(A).

21. Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B).

22. Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-

reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." *Id.* § 1601(5)–(6).

23. Accordingly, a state may not offer in-state tuition ("resident tuition") benefits to illegal aliens present in the United States based on their residence in the state, if those same benefits are denied to American citizens from other states. *See id.* § 1623(a). IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." *Id.*

24. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id.* § 1623(a).

25. Accordingly, under 8 U.S.C. § 1623(a), illegal aliens present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are also offered to all American citizens, regardless of their state of residence.

26. On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*,[1] ordering federal departments and agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." *Id.* § 2(a).

27. On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*,[2] directing relevant officials to ensure the "[e]qual

---

[1] Executive Order, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 19, 2025), https://perma.cc/V5KX-DX6Q.

[2] Executive Order, *Protecting American Communities From Criminal Aliens*, 90 Fed. Reg. 18761 (Apr. 28, 2025), https://perma.cc/83KY-N8Q9.

[t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." *Id.* § 5.

28. These Executive Orders emphasize that state governments must not confer greater benefits to illegal aliens present in our Nation than to U.S. citizens. They also reflect Congress's end—expressed in multiple provisions of the Immigration and Nationality Act—to reduce incentives for illegal immigration by limiting access to certain public benefits intended for U.S. citizens.

## ARKANSAS LAW

### I. Arkansas Makes Illegal Aliens Eligible for Resident Tuition.

29. Section 215, titled "Nontraditional documented immigration status[,]" authorizes state-supported institutions of higher education to "classify a student as in-state" for purposes of tuition if the individual meets one of the following requirements:

a. the individual "holds or is the child of a person who holds a federal Form I-766 United States Citizenship and Immigration Services-issued Employment Authorization Document, known popularly as a 'work permit'";

b. the individual "is a resident legally present in Arkansas and has immigrated from the Republic of the Marshall Islands"; or

c. the individual's "request for an exemption under Deferred Action for Childhood Arrivals has been approved by the Department of Homeland Security" and is not expired.

ARK. CODE ANN. § 6-60-215(a)(1).

30. If an individual satisfies one of the requirements of subdivision (a)(1), he or she must also have resided in Arkansas for at least three years at the time of application for admission to a state-supported institution of higher education and have either graduated from an Arkansas high school or received a high school equivalent diploma in Arkansas. *See* § 6-60-215(a)(2).

31. Section 215 directs ADHE to promulgate rules necessary to implement the section. *See* § 6-60-215(b)(1).

32. By its plain terms, Section 215 authorizes in-state tuition for eligible illegal aliens based on residency within Arkansas. *See* § 6-60-215. For example, an illegal alien whose parent has a work permit could qualify for in-state tuition, *see* § 6-60-215(a)(1)(A), but a parent possessing a work permit does not confer legal status to an alien who is eighteen years or older.

33. Additionally, per current guidance from the Department of Homeland Security, DACA status "does not confer lawful immigration status upon an individual, nor does it excuse any previous or subsequent periods of unlawful presence they may have."[3]

34. Implementing regulations provide that "all state-supported institutions of higher education wishing to provide in-state tuition to nontraditional documented immigrants under Arkansas Code § 6-60-215 shall establish a policy in accordance with the Acts 2019, No. 844, and submit the policy to the Division of Higher Education." *See* Ark. Code R. § 369-102.

35. At the same time, Arkansas explicitly denies eligibility for resident tuition rates to U.S. citizens who are not Arkansas residents. *See* ARK. CODE ANN § 6-61-202(a)(4) (setting forth the powers of the Higher Education Board, including the power to "promulgate and adopt uniform definitions and forms in such matters as...resident status of students"); *Arkansas Higher Education Coordinating Board Policy Manual*, 250–51 (2025) ("Legal residence in Arkansas is required for

---

[3] *Consideration of Deferred Action for Childhood Arrivals (DACA): Frequently Asked Questions*, USCIS, available at https://www.uscis.gov/humanitarian/consideration-of-deferred-action-for-childhood-arrivals-daca/frequently-asked-questions (last visited Sept. 8, 2026).

at least six continuous months prior to the classification decision in order to be classified as a resident for tuition purposes.").

36. ADHE implements the Higher Education Board's policies, including the "Policy on Tuition and Fees for Nontraditional Documented Immigrants[.]" *See* ARK. CODE ANN. § 25-7-101; *Arkansas Higher Education Coordinating Board Policy Manual*, 230 (2025).

37. Arkansas, like most states, charges two separate tuition rates at Arkansas public colleges and universities: resident and nonresident tuition.

38. For example, the University of Arkansas charges Arkansas residents approximately $33,988 for one academic year but charges non-Arkansas residents approximately $56,256.[4]

39. Similarly, Arkansas State University charges Arkansas residents approximately $5,425 per semester for tuition but charges non-Arkansas residents approximately $9,760.[5]

40. The same structure of substantially less-expensive in-state tuition for those classified as Arkansas residents as compared to non-Arkansas residents also holds true for Arkansas community colleges. For example, the University of Arkansas Community College at Morrilton charges Arkansas residents $140 per credit hour but charges non-Arkansas residents $190 per credit hour.[6]

41. Thus, pursuant to Section 215, colleges in Arkansas are rewarding illegal aliens with resident tuition while requiring U.S. citizens from other states to pay higher tuition rates. The University of Arkansas Community College at Morrilton ("UACCM") even has a special page on its website—"DACA & Undocumented"—where it announces "UACCM welcomes all students

---

[4] University of Arkansas, *Cost of Attendance*, https://perma.cc/4B4S-5YR3 (last visited September 8, 2026).

[5] Arkansas State University, *Tuition and Fees*, https://perma.cc/93N8-V3J2 (last visited September 8, 2026).

[6] University of Arkansas Community College at Morrilton, *Tuition*, https://www.uaccm.edu/finance/tuition.html (last visited September 8, 2026).

regardless of immigration status" and directs illegal aliens to a form where they can request in-state tuition in accordance with Section 215.[7] A copy of the form, titled "Non-Traditional Documented Immigrant Request for In-State Tuition," is attached to this Complaint as Exhibit A.

42. The University of Central Arkansas has a similar website page explaining that, pursuant to Section 215, eligible illegal aliens can qualify for in-state tuition rates.[8]

43. Section 215 authorizes all eleven four-year public universities and twenty-three two-year public colleges in Arkansas[9] to provide in-state tuition to illegal aliens while simultaneously charging U.S. citizens from other states higher tuition rates. *See* Ark. Code R. § 369-102 (providing that "all state-supported institutions of higher education" can adopt policies of providing in-state tuition for illegal aliens in accordance with Section 215). Not all of these institutions have opted to brazenly announce their violation of federal law on the school website.

44. Accordingly, Section 215 authorizes in-state tuition rates for eligible illegal aliens. Conversely, a U.S. citizen who is not eligible for in-state tuition under Section 215, due to residency requirements, is required to pay higher, nonresident tuition.

## CLAIM FOR RELIEF

### COUNT I
### VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION OF ARK. CODE. ANN. § 6-60-215 - TUITION)

45. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

---

[7] University of Arkansas Community College at Morrilton, *Undocumented & Non-Traditional Documented Immigrant Student Admission*, https://www.uaccm.edu/enroll/admission/undocumented_admission.html (last visited September 8, 2026).

[8] University of Central Arkansas, *UCA & Arkansas Act 844*, https://perma.cc/DC26-9C4X (last visited September 8, 2026).

[9] Arkansas Division of Higher Education Scholarship Application Management System, *Institutions in AR*, https://perma.cc/33DD-2KS2 (last visited September 8, 2026).

46. The Supremacy Clause of our Nation's Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2.

47. The preemption doctrine is derived from the Supremacy Clause. Express preemption occurs when Congress includes express language within the statute indicating its preemptive intent. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

48. Section 215 extends eligibility for in-state tuition benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits (lower, resident tuition rates) based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

49. Accordingly, the challenged provision, ARK. CODE ANN. § 6-60-215, is preempted and unconstitutional.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following relief:

1. That this Court enters a judgment declaring ARK. CODE ANN. § 6-60-215 violates the Supremacy Clause because it extends State and local public benefits to resident illegal aliens but not nonresident U.S. citizens through State law and is therefore unconstitutional and preempted.

2. That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing ARK. CODE ANN. § 6-60-215, or any similar subsequent statute, because it extends State and local public benefits to resident illegal aliens but not nonresident U.S. citizens through State law;

3. That this Court award the United States its costs and fees in this action; and

4. That this Court award any other relief it deems just and proper.

Respectfully Submitted

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANNA EDWARDS
JAMES N. CIRIGNANO
Counsel to the Associate Attorney General

HILARY K. PERKINS
Director
Enforcement & Affirmative Litigation Branch

JACQUELINE COLEMAN SNEAD
Deputy Director, Affirmative Litigation Section

*/s/ Garrett Greene
*Signed with permission.*
Garrett Greene (TX Bar No. 24096217)
Senior Litigation Counsel
Enforcement & Affirmative Litigation Branch
Civil Division, U.S. Department of Justice
450 Fifth Street, N.W., Ste. 6400 South
Washington, D.C. 20001
Tel.:(202) 549-9429
Email: Garrett.greene@usdoj.gov

*Attorneys for the United States*